FILED
2013 Apr-24  PM 12:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | |
|---|---|
| C A S S A N D R A   R E N E E  NICHOLS, | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | )   **Civil Action No. CV 08-S-501-NW** |
| | ) |
| **VOLUNTEERS OF AMERICA, NORTH ALABAMA, INC.,** | ) |
| | ) |
| | ) |
| **Defendant.** | ) |

### MEMORANDUM OPINION

This case is before the court on remand from the Eleventh Circuit.[1]  The complaint of plaintiff, Cassandra Renee Nichols, asserted numerous federal discrimination claims and state law torts against her former employer, Volunteers of America, North Alabama, Inc.[2]  This court entered summary judgment in favor of the defendant on November 23, 2010, however, and dismissed all of plaintiff's claims.[3]  Plaintiff appealed, and the Eleventh Circuit affirmed in all respects, save one.  When ruling upon defendant's motion for summary judgment, this court found that plaintiff "effectively abandoned" her hostile work environment claim and dismissed it.[4]  A

---

[1] *See* doc. nos. 66 (Eleventh Circuit Opinion), and 67 (Mandate).

[2] *See generally* doc. no. 1 (Complaint).

[3] *See* doc. no. 57 (Memorandum Opinion), at 35-36.

[4] *Id.* at 12 ("Plaintiff offered no response to defendant's well-supported arguments that summary judgment should be granted on that claim.  Issues and contentions not raised in a party's response brief are deemed abandoned. ") (citing *Chapman v. AI Transport*, 229 F.3d 1012, 1027

majority of the Eleventh Circuit panel held that decision to be error, saying that, by

presenting evidence that plaintiff had encountered racially hostile behavior and

language at Volunteers on a daily basis, she had "presented sufficient evidence to

create a genuine issue of material fact about whether the harassment she allegedly

suffered at Volunteers was severe or persuasive." *Nichols v. Volunteers of America,*

*North Alabama, Inc.*, 470 F. App'x 757, 761 (11th Cir. 2012) (*per curiam*).  Even so,

the majority's opinion observed that the defendant had

> also moved for summary judgment [on the plaintiff's hostile work
> environment claim] based on the affirmative defense recognized in
> *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S. Ct. 2275, 141 L.
> Ed. 2d 662 (1998), and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742,
> 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998), [*but*] the district court did
> not address whether Volunteers was entitled to summary judgment on
> that alternative ground.  On remand, the district court should address

---

(11th Cir. 2000) (*en banc*)).  *See also id*. at 13-15, stating that:

> It is not sufficient for Nichols to merely mention the words "harassment" and
> "hostile work environment" randomly throughout her response brief.  Equally
> insufficient is Nichols's statement at the beginning of her "Argument" section that
> she "was subjected to severe and pervasive racially derogatory language and received
> discriminatory and retaliatory discipline, including being demoted, put on
> administrative leave, stripped of her higher hourly wage, and constructively
> discharged."  At no point in her response brief does Nichols actually address her
> hostile work environment claim — to the extent that she even alleged this claim in
> her muddled complaint — despite VOA's well-articulated and properly supported
> arguments that the purported hostile work environment was neither severe nor
> pervasive, and that Nichols did not reasonably avail herself of VOA's
> anti-harassment policies.
>
> The court will not give consideration to arguments that are not fully
> developed or bolstered with legal authority. . . .  Accordingly, VOA is entitled to
> summary judgment on Nichols's hostile work environment claim.  [Footnotes and
> citations omitted.]

whether the affirmative defense recognized in *Ellerth* and *Faragher* applies.  We will not address this issue in the first instance.

*Nichols*, 470 F. App'x at 761 (alterations supplied).

Upon consideration of the parties' briefs and oral arguments addressing the issues remanded by the Eleventh Circuit, this court concludes, for the reasons discussed below, that defendant's motion for summary judgment on plaintiff's racially hostile work environment claim should be denied.[5]

## I. FACTUAL BACKGROUND

The underlying facts of this controversy have been recounted in this court's prior opinion, as well as the Eleventh Circuit's opinion on appeal.[6]  Consequently, the following discussion will state only those facts, construed in the light most favorable to plaintiff, that are relevant to a determination of whether summary judgment should be entered in favor of defendant on plaintiff's sole, remaining claim.

Defendant promulgated a "Personnel Policies Manual" that addressed, among

---

[5] Defendant also previously moved to strike portions of plaintiff's evidence submitted in opposition to summary judgment. *See* doc. no. 50.  In its prior summary judgment opinion, this court denied the motion to strike as moot.  Doc. no. 57 (Memorandum Opinion), at 2, 35.  The motion to strike is again in play because the case has returned to the court at the summary judgment stage.  Nevertheless, the viability of the *Faragher* defense can be determined without the need to rely upon the evidence to which defendant objects.  Stated differently, the court need not consider plaintiff's declaration assertions that she reported harassing behavior to defendant's Human Resources Department and Chief Executive Officer, *see* doc. no. 50 (Defendant's Motion to Strike), at 16-17, 20-21, because plaintiff testified in her deposition that she reported the harassment to her immediate supervisor, Sonja King.  Thus, the motion to strike is still due to be denied.

[6] *See* doc. no. 57 (Memorandum Opinion), at 3-11; doc. no. 66 (Eleventh Circuit Opinion), at 2-4.

other things, its anti-harassment policy.[7]  The Manual stated that defendant sought to

"ensure that . . . employees are treated fairly during employment[,] without regard to

their race, creed, color, age, religion, sex, national origin, or disability."[8]  The Manual

pledged under the heading "Productive Work Environment" that defendant "will not

tolerate verbal or physical conduct by any employee that harasses, disrupts, or

interferes with another's work performance or which creates an intimidating,

offensive, or hostile environment."[9]   The Manual then outlined the complaint

procedure for employees who believed they had been subject to harassment — a

procedure that included the following steps:

> C.     Any employee who believes that the actions or words of a
> supervisor or fellow employee constitute unwelcome harassment
> has a responsibility to report or complain as soon as possible to
> *their supervisor* and/or to the Human Resources Department or
> CEO.

> D.     All complaints of harassment will be investigated promptly as
> directed by the CEO with an emphasis upon complete impartiality
> and confidentiality.  In all cases, the employee is to be advised of
> the management's findings and conclusion.[10]

Defendant provided a copy of the Manual to plaintiff at the beginning of her

---

[7] Doc. no. 45-4 (Attachments to Nichols's Deposition), at ECF 3-44 (Personnel Policies Manual).

[8] *Id.* at ECF 12 (alteration supplied).

[9] *Id.* at ECF 40.

[10] *Id.* (emphasis supplied).

employment in 2005.[11]  Plaintiff received a second copy, which she signed, in March

of the following year.[12]  She testified that she had read, and was familiar with, the

complaint procedure policy contained within the Manual.[13]

Sonja King was plaintiff's immediate supervisor.[14]  King was not plaintiff's

only supervisor, however.[15]  For example, Amy Johnson (a "House Manager II") and

fellow employee Sarah Rickard also assigned plaintiff duties and exercised oversight

of her work.[16]

Plaintiff testified that, at various undisclosed times, she reported to Sonja King

that some of defendant's employees, including Teresa Stephenson (defendant's

Program Director) and Sarah Rickard (a "House Manager II") were subjecting her to

a hostile environment through the use of disparaging and offensive racial remarks.[17]

---

[11] *See* doc. no. 45-2 (Deposition of Cassandra Nichols, Part 2), at 212.

[12] *Id.*; *see* doc. no. 45-4 (Attachments to Nichols's Deposition), at ECF 4-5.

[13] Doc. no. 45-2 (Deposition of Cassandra Nichols, Part 2), at 212-213.

[14] *See id.* at 173; doc. no. 48-3 (Declaration of Cassandra Nichols), at 3, 11, 14, 45; *see also* doc. no. 57 (Memorandum Opinion), at 9; doc. no. 66 (Eleventh Circuit Opinion), at 2.

[15] *See* doc. no. 48-1 (Declaration of Sonja King), at 37, 41, 52

[16] *Id.* at 9, 37; doc. no. 48-3 (Declaration of Cassandra Nichols), at 12, 45; doc. no. 57 (Memorandum Opinion), at 5; doc. no. 66 (Eleventh Circuit Opinion), at 2.

[17] Doc. no. 45-1 (Deposition of Cassandra Nichols, Part 1), at 155-66 (reporting complaints about Stephenson's comments); doc. no. 45-2 (Deposition of Cassandra Nichols, Part 2), at 173 ("As I said, I reported everything to Sonja . . . .  Sonja was my supervisor.  So I reported it to her."), 175 ("I've reported things to Sonja[.]"), 180-82 ("I done my chain of command.  I told her if I had harassment, something wrong.  I told Sonja . . . I just talked — whatever I had a complaint about, I talked to Sonja about it."), 185 ("I reported [Amy Johnson's use of the word "nigger"] to Sonja."), 213-14 ("I did that.  I followed the chain of command.  I was supposed to tell Sonja. . . .  I mean, I let Sonja know. . . .  I told Sonja."); doc. no. 57 (Memorandum Opinion), at 9.

## II. ANALYSIS

The parties devoted little discussion in their summary judgment briefs to the

*Ellerth* and *Faragher* affirmative defense.  Defendant's argument on the issue was

less than three pages.[18]  Plaintiff's response brief failed to address the issue at all.[19]

In any event, the defense applies when it is shown:  "(a) that the employer exercised

reasonable care to prevent *and correct promptly* any . . . harassing behavior; and (b)

that the plaintiff employee unreasonably failed to take advantage of any preventive

or corrective opportunities provided by the employer or to avoid harm otherwise."

*Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1296-97 (11th Cir. 2000)

(quoting *Faragher*, 524 U.S. at 807) (emphasis supplied).

> A court's assessment . . . requires, first, an analysis of whether the
> employer has exercised reasonable care in *preventing* . . . harassing

---

[18] Doc. no. 44 (Brief in Support of Summary Judgment), at 31-33.

[19] *See generally* doc. no. 47 (Brief in Opposition to Summary Judgment).  Ordinarily, a court should grant summary judgment when plaintiff does not respond to defendant's arguments. *See, e.g.*, *Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009) (It is "incumbent upon the nonmovant to respond by, at the very least, raising in their opposition papers any and all arguments or defenses" that preclude summary judgment.)  Nevertheless, two reasons suggest a different course here.

First, the Eleventh Circuit already rejected this court's conclusion that plaintiff abandoned her hostile work environment claim, even despite her brief's complete lack of *argument* on the matter.  Doc. no. 66 (Eleventh Circuit Opinion), at 6-9 (recounting the *evidence* that supports plaintiff's hostile work environment claim, but not identifying any legal arguments plaintiff made on summary judgment); *see id.* at 20-22 (Kravitch, J., concurring in part and dissenting in part) (noting that plaintiff's brief never discussed the elements of, and failed to formulate arguments about, her hostile work environment claim ).

Second, the *Faragher* defense is an affirmative one for which defendant has the burden of proof.  *See Frederick v. Sprint/United Management Co.*, 246 F.3d 1305, 1313 (11th Cir. 2001).  Thus, even though plaintiff did not respond to defendant's argument, the onus still rests on defendant to demonstrate that the defense applies.

behavior.  The court next directs its inquiry to whether the employee made reasonably sufficient use of available avenues to put the employer on notice of the problem.  Finally, the court refocuses on the employer to determine whether the employer or its authorized agent, *after receiving notice of the harassment*, took adequate steps to abate it and prevent its recurrence.

*Coates v. Sundor Brands, Inc.*, 164 F.3d 1361, 1369 (11th Cir. 1999) (Barkett, J., concurring) (first emphasis in original, second emphasis supplied).

Of course, if plaintiff — based on the facts viewed in the light most favorably to her — did not avail herself of the complaint procedures outlined in the defendant's Personnel Policies Manual, then there is no further inquiry into defendant's remedial actions, and the defense applies.  *See id.* at 1364 ("*Only* if we determine that adequate notice of the harassment was given to [the employer] do we *then* move to determine whether [it] responded reasonably to [plaintiff's] complaint.") (emphasis and alterations supplied).  That is the reasoning and conclusion that defendant urges here.  Importantly, defendant does not argue that it promptly acted to correct the harassing behavior.[20]  Instead, defendant contends that plaintiff "unreasonably failed to avail herself of the corrective or preventive opportunities provided" by defendant because she "complained to her friend (and fellow disgruntled employee) Sonja King about the alleged harassment, but . . . never complained to Human Resources or

---

[20] *See* doc. no. 44 (Brief in Support of Summary Judgment), at 31-33 & n.11 (acknowledging that, under the first prong of the *Faragher* defense, defendant must show that it exercised reasonable care in promptly correcting harassment, but failing to provide argument on that issue).

7

[defendant's CEO Victor] Tucker."[21]  Put differently, defendant asserts that plaintiff failed to inform the appropriate personnel about the harassment she allegedly endured.

As a threshold matter, it appears that defendant exercised reasonable care in preventing harassment based upon the existence, content, and dissemination of its anti-harassment policy.  In deciding whether an employer exercised reasonable care, courts consider whether the company promulgated a written anti-harassment policy, although that fact alone is not dispositive.  *See Frederick v. Sprint/United Management Co.*, 246 F.3d 1305, 1313-14 (11th Cir. 2001).  Additionally, an employer must show that the company's "harassment policy was effectively published, that it contained reasonable complaint procedures, and that it contained no other fatal defect."  *Id.* at 1314.  Dissemination of the policy is critical, and the complaint procedures must provide "multiple avenues of lodging a complaint" to designated representatives of the employer.  *Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1298-99 (11th Cir. 2000).

It appears to this court that defendant satisfied the foregoing standards.  It included a written anti-harassment policy in its Personnel Policies Manual.[22]  Plaintiff

---

[21] Doc. no. 44 (Brief in Support of Summary Judgment), at 32 (alteration supplied).

[22] Doc. no. 45-4 (Attachments to Nichols's Deposition), at ECF 3-44 (Personnel Policies Manual).

was provided two copies of the Manual, and admitted that she had read and was familiar with the policy and complaint procedures.[23]   Finally, it appears that a reasonable factfinder could conclude that the policy's complaint procedures were reasonable and contained alternative channels for lodging complaints:  employees could report harassment directly to their supervisor, or to either the Human Resources Department or the Chief Executive Officer.[24]

"[O]nce an employer has promulgated an effective anti-harassment policy and disseminated that policy and associated procedures to its employees, then 'it is incumbent upon the employees to utilize the procedural mechanisms established by the company specifically to address problems and grievances.'"  *Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1300 (11th Cir. 2000) (quoting *Farley v. American Cast Iron Pipe*, 115 F.3d 1548, 1554 (11th Cir. 1997)) (alteration supplied). "The sole inquiry when the employer has a clear and published policy is whether the complaining employee followed the procedures established in the company's policy." *Breda v. Wolf Camera & Video*, 222 F.3d 886, 890 (11th Cir. 2000).

There are genuine issues of material fact that impact the question of whether plaintiff complied with the anti-harassment policy.  Construing those issues of fact in the light most favorable to plaintiff, it appears that she complied with the

---

[23] Doc. no. 45-2 (Deposition of Cassandra Nichols, Part 2), at 212-213.

[24] Doc. no. 45-4 (Attachments to Nichols's Deposition), at ECF 40.

9

harassment policy.   The policy provided employees the option of reporting harassment "to their supervisor."[25]  Plaintiff testified that she reported the harassment to Sonja King.[26]  King was plaintiff's immediate supervisor,[27] and not just plaintiff's "friend."[28]  Accepting those facts as true, it appears that plaintiff satisfied her duty to take advantage of defendant's complaint procedures; and if she did, then defendant, by the terms of its own policy, is deemed to have had notice of the harassment.[29]  *See Breda*, 222 F.3d at 889 ("When an employer has a policy for reporting harassment that is clear and published to its employees, and an employee follows that policy, the employer's notice of the harassment is established by the terms of the policy."); *see*

---

[25] *Id.*

[26] Doc. no. 45-1 (Deposition of Cassandra Nichols, Part 1), at 155-66 (reporting complaints about Stephenson's comments); doc. no. 45-2 (Deposition of Cassandra Nichols, Part 2), at 173 ("As I said, I reported everything to Sonja . . . .  Sonja was my supervisor.  So I reported it to her."), 175 ("I've reported things to Sonja[.]"), 180-82 ("I done my chain of command.  I told her if I had harassment, something wrong.  I told Sonja . . . I just talked — whatever I had a complaint about, I talked to Sonja about it."), 185 ("I reported [Amy Johnson's use of the word "nigger"] to Sonja."), 213-14 ("I did that.  I followed the chain of command.  I was supposed to tell Sonja. . . .  I mean, I let Sonja know. . . .  I told Sonja."); doc. no. 57 (Memorandum Opinion), at 9.

[27] Doc. no. 45-2 (Deposition of Cassandra Nichols, Part 2), at 173; doc. no. 48-3 (Declaration of Cassandra Nichols), at 3, 11, 14, 45.

[28] Doc. no. 44 (Brief in Support of Summary Judgment), at 32.

[29] Defendant suggests in passing that plaintiff's failure to lodge additional complaints — *i.e.*, other than those made to King — is significant: it claims that "Nichols acted precisely in the manner that alleged victims of harassment should not act in order to prevail — by not complaining to the people that needed to know, *even after her alleged complaints to King were not acted upon*."  Doc. no. 44 (Brief in Support of Summary Judgment), at 33 (emphasis supplied).  But once plaintiff complied with the policy by reporting the harassment to her supervisor, she was not required to report it again later.  *See Madray*, 208 F.3d at 1302 (citing *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 65 (2d Cir. 1998) ("When a plaintiff reports harassing misconduct in accordance with company policy, she is under no duty to report it a second time before the company is charged with knowledge of it.")).

*also Coates*, 164 F.3d at 1364.

If a plaintiff reports harassment in accordance with the employer's policy, the employer then must show that it took remedial steps within a "reasonably prompt" time after it was on notice of the alleged harassment. *Frederick*, 246 F.3d at 1314; *see Coates*, 164 F.3d at 1369 (Barkett, J., concurring). As mentioned above, however, defendant made no attempt to prove the remedial prong of the *Faragher* defense.[30] Rather, it based its position on the contention that plaintiff "unreasonably failed to avail herself of the corrective or preventive opportunities provided" in its anti-harassment policy.[31] Defendant may ultimately be able to prove that contention at trial. However, at the summary judgment stage, there are genuine issues of material fact that, when construed in plaintiff's favor, preclude the entry of summary judgment on plaintiff's hostile work environment claim.

### III.  CONCLUSION AND ORDER

For all of the foregoing reasons, defendant's motion for summary judgment based on the *Faragher* defense is DENIED. Defendant's motion to strike is denied as MOOT. The case will be set for a pretrial conference by separate order.

DONE and ORDERED this 24th day of April, 2013.

---

[30] *See* doc. no. 44 (Brief in Support of Summary Judgment), at 31-33.

[31] *Id.* at 32; *see also supra* note 29.

United States District Judge